UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 10-20663-CV-LENARD/TURNOFF

MANUEL PANTOJA, individually and
on behalf of all similarly situated
plan participant/beneficiary,

      Plaintiff,

vs.

EDWARD ZENGEL & SON EXPRESS, INC.,
a/k/a EDWARD ZENGEL & SON, INC.;
EDWARD ZENGEL, SR.; EDWARD ZENGEL, JR.,
and MARIE ZENGEL,

      Defendants,

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Plaintiff's Motion to Certify Class **[DE55]**, and an

Order of Referral entered by the Honorable Joan A. Lenard. **[DE42]**. A hearing on this Motion took

place before the undersigned on March 3, 2011. **[DE63]**.

Upon review of the Motion, the Response, the Reply, hearing argument from counsel, and being

otherwise duly advised in the premises, the undersigned makes the following findings.

### Background

This action was filed under the Employee Retirement Income Security Act of 1974, 29 U.S.C.

§§ 1001, et. seq. ("ERISA"), by Plaintiff, Manuel Pantoja ("Plaintiff"), on behalf of himself and others

similarly situated, against Defendants, Edward Zengel & Son Express, Inc., a/k/a  Edward Zengel &

Son, Inc., Edward Zengel, Sr., Edward Zengel, Jr., and Marie Zengel (collectively "Defendants"). The

Amended Complaint alleges, among other things, that he and certain other employees of Defendants

designated certain funds to be withheld from their paychecks for deposit into the company's retirement

plan. Am. Compl. **[DE28 ¶¶ 16-19]**. Plaintiff specifically alleges that Defendants deducted certain amounts from his paychecks, but failed to deposit the withheld wages and/or notify the employees/plan participants of their failure to do so. Id. at ¶ 35.

### Analysis

Plaintiff seeks to certify the following class: "all former and current EZS employees (and their beneficiaries) who participated (or were beneficiaries) in the Edward Zengel & Son, Inc. employee retirement plan (the "Plan") at any time since January 1, 2007 to present (the "Class Period") for whom the Defendants failed to remit to the Plan appropriate 401(k) contributions/benefits." **[DE41]**. Defendants oppose certification, arguing, *inter alia*, that: (1) Plaintiff does not have a cognizable claim under ERISA, (2) even if a valid claim existed, this court should yield to the primary jurisdiction of the Department of Labor, (3) Plaintiff lacks standing, (4) Plaintiff fails to meet the requirements of Fed. R. Civ. P. 23(a) and (b). Each argument shall be addressed in turn.

*ERISA*

As noted above, Defendants argue that Plaintiffs' ERISA claims are invalid as a matter of law. Defendants specifically contend that "the real nature of this dispute surrounds a prevailing wage grievance arising under a service contract for transportation of mail on behalf of the United States Postal Service," ("USPS") and is therefore governed by the McNamara-O'Hara Service Contract Act of 1965, 41 U.S.C. § 351 ("SCA") and not ERISA. Defendants previously raised these arguments in a motion to stay discovery pending a determination as to Plaintiff's standing on January 7, 2011. **[DE48]**. Judge Lenard denied the motion by way of a paperless Order on January 10, 2011.  **[DE50]**. Because the arguments have been raised again, in connection with the instant motion, the undersigned shall address same.

2

The SCA governs all service contracts, exceeding $2,500, entered into for the primary purpose of furnishing services to the United States by way of service employees. 41 U.S.C. § 351(a). Under the SCA, prevailing wage and fringe benefit obligations are imposed upon entities that contract to perform services with the federal government. 41 U.S.C. § 351(a)(2). Jurisdiction to enforce the SCA lies with the Secretary of Labor. 29 U.S.C. §§ 352 (b), 353. In this connection, the SCA authorizes the Secretary to enforce the act through administrative proceedings, not by way of a private action. Id; see also § 354.

Here, the record reflects that Defendants contract with USPS to haul mail. Am. Decl. Zengel [DE51-1, ¶ 4]. District courts have recognized Plaintiff's job category, a truck driver delivering mail under a contract between his employer and the U.S. Government, as a "service employee within the meaning of the SCA." Nichols v. Mowers News Serv., Inc., 492 F.Supp. 258 (D.C. Vt. 1980) (finding that wage grievances must be brought in accordance with the procedures set forth in the SCA); see also, U.S. v. Kirkland, 12 F.3d 199 (11th Cir. 1994) (noting that contract drivers are not part of the postal career services entitled to benefits under the civil service law; instead, their wages are provided by the contractor and governed by the SCA). In light of same, Defendants argue that Plaintiffs cannot use ERISA's civil enforcement scheme to circumvent the unavailability of a private right of action that would not be afforded to them by the SCA. However, Defendants' arguments oversimplify the issues and fail to persuade.

When two federal statutes overlap, it is settled law that a court must give effect to both if at all possible. Degan v. Field Club Omaha, No. 8:04CV607, 2005 WL 1459392 (D. Neb. June 20, 2005) (citing U.S. v. Borden Co., 308 U.S. 188, 198 (1939)). "When two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard

3

each as effective." FCC v. NextWave Personal Comm., Inc., 537 U.S. 293 (2003). Only where a "positive repugnancy exists between the overlapping statutes may a court regard one statute as impliedly repealed by the other statute." Degan, 2005 WL1459392 at *2 (citing Borden, 308 U.S. at 198). In such a case, the extent of the repeal would be limited to that what is minimally necessary to address the repugnancy. Borden, 308 U.S. at 199.

The issue of the overlapping statutes in question, ERISA and the SCA, appears to be one of relative first impression. As such, we must look to coexistence as it relates to other legislation. In this regard, binding precedent from Lee v. Flightsafety Serv. Corp., 20 F.3d 428 (11th Cir. 1994) is very instructive. In Lee, the plaintiffs, current and former firefighters and engineers in Camden County, Georgia, sued the Defendant, a base operations service contractor, for alleged violations of the Fair Labor Standards Act ("FLSA"). Id. There the defendant claimed that the SCA applied to its employment relationship with the plaintiffs and that the plaintiffs could not file a claim under FLSA. Id. However, the Eleventh Circuit, affirming the district court's ruling, found that the plaintiff could file a claim under FLSA. Id. The Lee Court reasoned that though "[t]he defendants correctly assert that there is no private right of action under the SCA[,] . . . they are incorrect when they assert that the FLSA does not apply." Id. at 431. This is because "Congress intended that the FLSA overlap with other federal legislation." Id. Since these statutes "are not mutually exclusive . . . [t]he provisions of the FLSA and the SCA may all apply as long as they do not conflict." Id. The Eleventh Circuit further noted that "[i]t is possible that the FLSA may allow a private right of action even though the SCA does not" because "[s]uch a difference between the two statutes is not a conflict." Id.

4

This coexistence can also be seen in <u>Powell v. U.S. Cartridge Co.</u>, 339 U.S. 497 (1950).  In that case, munitions workers employed by way of government contracts, pursuant to the Walsh-Healy Act[1], sued their employers for overtime compensation under the FLSA.  In addressing this issue of coexistence, the Court noted that the broad sweeping nature of the FLSA was evidence of congressional awareness that the FLSA would overlap federal legislation affecting labor standards.  In so doing, the Court held that the Walsh-Healy Act did not serve to preclude the application of the FLSA. <u>Id.</u> at 519-20.

Under the rationale of <u>Lee</u> and <u>Powell</u>, courts have found that the SCA can indeed be supplemented by other federal statutes, such as FLSA, despite the fact that the FLSA allows for a private right of action, and the SCA does not.  <u>See</u> <u>McDonald v. Eagle Express Lines, Inc.</u>, No. 09-CV-2039, slip op. 2009 WL3147568 (N.D. Il. Sept. 29, 2009); <u>see also</u>, <u>Degan</u>, 2005 WL 1459392 (finding the co-existence of FMLA and ERISA).

Generally speaking both ERISA and the SCA were enacted to guarantee employees certain rights. ERISA was enacted in order to create a comprehensive statute for the regulation of employee benefit plans. <u>Aetna Health, Inc. v. Davila</u>, 542 U.S. 200, 208 (2004). The Congressional intent in adopting ERISA is as follows:

> The Congress finds ... that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; ... It is therefore desirable in the interest of employees and their beneficiaries ... that minimum standards be provided assuring the equitable character of such plans and their financial soundness ... It is hereby further declared to be the policy of this chapter to protect ... the interests of participants in private pension plans and their beneficiaries....

<u>Suggs v. Pan American Life Ins. Co.</u>, 847 F.Supp. 1324 (S.D.Miss. 1994) (quoting 29 U.S.C. § 1001).

---

[1]The Walsh-Healy Act, like the SCA, regulates wage and hours of employees working on certain government contracts.

In similar fashion, the SCA is specifically designed to ensure that employees working on federal contracts receive, at a minimum, the same prevailing wages and benefits as other employees, government and non-government alike. As noted above, in furtherance of same, the SCA requires that every service contract entered into by the United States, in excess of $2,500, include a provision for fringe benefits "not otherwise required by *Federal, State, or local law* to be provided by the contractor or subcontractor." 41 U.S.C. § 351(a)(2) (emphasis added).  Upon review, nothing in either statute suggests that they are in conflict with one another.

While the SCA does not explicitly state that other laws shall apply, "no fair reading of the emphasized phrase makes possible any other construction of the language." Diaz v. Gen. Sec. Services Corp., 93 F. Supp. 2d 129 (D. Puerto Rico 2000) (the SCA did not create a private right of action and thus, could not preempt local laws governing fringe benefits). This language clearly implies the application of other laws benefitting workers, and adds other provisions to insure that contract employees receive certain minimum benefits and protections. The failure of Congress to provide a private cause of action indicates that it did not intend the SCA to occupy the whole field. Inkrote v. Protection Strategies Inc., No. 309-CV-51, 2009 WL 3295042 (N.D.W.Va. Oct. 13, 2009). Accordingly, in this Court's view, the SCA does not serve to foreclose Plaintiffs' cause of action under ERISA.

*Primary Jurisdiction*

As noted above, Defendants argue that this cause should be dismissed or stayed pursuant to the primary jurisdiction doctrine, in order to allow the Department of Labor (DOL) to "fulfill its role as the primary enforcement authority." **[DE45]**.  Because the DOL began its investigation prior to the filing

6

of the within Complaint, and because the investigation is still ongoing, Defendants suggest that this action should be stayed pending the DOL's investigation. Id. Defendants also argue that a stay and/or dismissal is warranted, because the DOL has the requisite expertise needed to uniformly apply ERISA's complex regulatory scheme. Plaintiff, on the other hand, argues that the application of the doctrine of primary jurisdiction would prevent full, timely, and meaningful redress.

The undersigned agrees.

Plaintiff concedes that he initiated contact with the DOL prior to the filing of this action. **[DE53]**. According to Plaintiff, he reached out to the DOL in an effort to obtain information and guidance. Id.   Defendants assert that the DOL initiated a form of audit, in 2009,  in response to Plaintiff's inquiry.   Defendants further claim that they have "worked with the DOL auditor and regularly provided him information pursuant to the investigation." See Zengel Decl.¶¶ 12-15.  In this connection, Plaintiff indicates that he has made numerous requests – to Defendants– for documents and status report related to  the  supposed audit, but has received nothing.

Upon review, the record herein reflects no documented evidence or information as to the scope or status of any pending DOL investigation and/or audit.  In fact, the Scheduling Report mentions no issue as to a DOL audit.  Further, the Answer's only mention of the alleged DOL audit is that in response to same it would be "funding Plaintiff's account in the retirement plan for all funds due in satisfaction of the ongoing Department of Labor audit initiated on January 13, 2010." **[DE9]**.

As a general matter,  the primary jurisdiction doctrine can apply,  even in cases where the court is authorized to adjudicate the claim before it.   This is specifically true when enforcement of the claim requires the resolution of issues which, under a regulatory scheme  have been placed within the special competence of an administrative body. See United States v. Western Pac. RR Co., 352 U.S. 59, 62

7

(1956). The purpose is to prevent courts from making essential decisions that require expert knowledge. In this regard, courts should defer to agencies when the proceedings give the parties reasonable opportunity to seek an administrative ruling. See Reiter v. Cooper, 507 U.S. 258, 268 (1993). In deciding whether to apply the primary jurisdiction doctrine, courts should balance the need for the administrative agency's expertise with the need to "resolve disputes fairly yet as expeditiously as possible" Mississippi Power & Light Co. v. United Gas Pipeline Co., 532 F.2d 412, 419 (5th Cir. 1976).

Here, however, there is no record evidence to indicate that any pending DOL audit is geared towards providing Plaintiff with a forum to present his claims and/or with a full administrative hearing. In fact, Plaintiff appears to be quite uninformed about the DOL investigation. The only notable information of record about the audit is contained in Zengel's declaration. Same refers only to a meeting with a DOL auditor and a verification, by Defendants, of fringe payments and plan contributions that occurred from July through October of 2010. Zengel Decl. **[DE 46-1, ¶12-15]**. All evidence points to the investigation being nothing more than an audit of Defendants – nothing to do with the within claim.

For these purposes, it is also helpful to review the legislative purpose of the underlying statute in order determine whether the doctrine should apply. Cf. Thunder Basin Coal Co. v. Reich 510 U.S. 200, 207 (1994) ("Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review"). Because Congress passed ERISA to provide full legal remedies against violations and "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities . . . or recovery of benefits", it is unlikely that the legislators envisioned agency investigations as a means to prolong or even replace a civil trial.

8

S. Rep. No. 93-127 at 34 (1974). The statute's creation language, which establishes who can bring a civil action, gives district courts direct jurisdiction, and establishes civil penalties against breaching fiduciaries, demonstrates that this piece of legislation was not intended to preclude initial judicial review. 29 U.S.C.A. § 1132 (a-i).

Consistent with the above, and considering, among other things, Defendants' late raising of the primary jurisdiction issues,[2] and the lack of record evidence as to the scope of the DOL audit, the undersigned find that the primary jurisdiction doctrine should not be applied to this action.

*Standing*

Having determined that Plaintiffs' ERISA claim is properly before this Court, the undersigned shall now address the issue of Article III standing. It is well-settled in the Eleventh Circuit that "any analysis of class certification must begin with the issue of standing." Prado-Steinman v. Bush, 221 F.3d 1266, 1280 (11th Cir. 2000). In other words, prior to the certification of a class, the district court must determine that at least one named class representative has Article III standing to raise each class sub-claim. Id. at 1279.

Defendants argue that the "Plaintiff lacks Article III standing because he does not have any 'injury-in-fact'." **[DE 45]**. This is because Defendants believe they have "fully satisfied [their] fringe benefit obligation to Mr. Pantoja, including interest, as of August 10, 2010." Id. On the other hand, Plaintiff argues that Article III standing is looked at in light of the facts as they exist at the time the complaint was filed; that Plaintiff has not been made whole since Defendants merely remitted his stolen goods where he is entitled to gains/ profits realized by the Defendants while they had the funds; and Plaintiff is also seeking equitable relief.

_____

[2]Defendants have raised this issue for the first time in response to Plaintiff's Motion to Certify Class.

Typically, the Article III standing requirement must be satisfied at the time a complaint is filed. At the time this Complaint was filed, Plaintiff had an undisputed injury in fact. On August 10, 2010, however, and during the course of this litigation, Defendant made payments to Plaintiff with regards to this matter. However, this payment does not retroactively strip the Plaintiff of the injury-in-fact he had at the time of filing said Complaint. This is because, as the Supreme Court has indicated, "[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." See Lujan v. Defenders of Wildlife, 504 U.S. 555, 569 (1992) (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989)). Further, as correctly noted by Plaintiff, courts have held that a plaintiff "has ERISA standing because he was entitled to benefits under the Plans at the time he filed his complaint, regardless whether he later accepted his vested benefits during the course of his lawsuit." Crotty v. Cook, 121 F.3d 541, 547 (9th Cir. 1997).

It is worth noting that neither party raised the issue of Plaintiff's standing *post* filing of the Amended Complaint.  It is generally true that the courts determine the issue of standing based upon the facts at the time of the lawsuit's commencement.  However, if amended, the date of the amended complaint becomes the relevant date. In Re: Patterson Companies, Inc. Securities Derivative & ERISA Litigation, 479 F.Supp.2d 1014 (D.Minn. 2007).  In other words, it is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect. Id. (citing In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000). For present purposes, the Amended Complaint does not change the result – Plaintiff has standing.

Here, even though Defendants "fully satisfied its fringe benefit to [Plaintiff] including interest" prior to the filing of the Amended Complaint on September 1, 2010, taking the allegations made therein as true, Plaintiff has not yet been made whole.  That is, Plaintiff may be entitled to additional relief

10

under ERISA; such as, investment gains and/or profits. Zengel Decl. **[DE46-1, ¶14]**.   Of equal

importance, Plaintiff has requested, and may be entitled to, injunctive relief.

In this Court's view, a finding of no standing  would flout the evident purposes of ERISA, i.e.,

"to protect . . . the interests of participants in employee benefit plans and their beneficiaries, by requiring

the disclosure and reporting to participants and beneficiaries of financial and other information with

respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of

employee benefit plans, and by providing for appropriate remedies, sanctions and ready access to the

Federal courts." See 29 U.S.C. § 1001(b).   As noted by the Crotty court,

> [Such a rule] does not provide an "appropriate" remedy or sanction under the ERISA statute.
> If a plan administrator fails to make the required contributions, a participant should receive
> statutory compensatory damages and attorneys' fees, in addition to his vested benefits.

Crotty, 121 F.3d at 546.

Consistent with the above, the undersigned finds that Plaintiff has the requisite standing.

Having addressed the preliminary arguments espoused by Defendants, the Court now turns to the merits

of the motion for class certification.

*Certification*

In determining whether to certify a class, a district court has broad discretion.  Washington v.

Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir. 1992).  However, a class action

may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Fed. R.

Civ. P.  23  have been satisfied. Almonar v. Bankatlantic Bancorp, Inc., 261 F.R.D. 672 (S.D. Fla.

2009) (citing Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1994). The burden on a motion to

certify rests with the moving party. Valley Drug Co. v. Geneva Pharms., Inc., 350 F. 3d 1181, 1187

(11th Cir. 2003). For these purposes, however, the court must accept as true the allegations contained

in Plaintiff's complaint. <u>Napoles-Arcila v. Pero Family Farms, LLC</u>, No. 08-80779-CIV, slip op. 2009 WL 1585970 (S.D. Fla. June 4, 2009) (citing <u>Moreno-Espinosa v. J & J Ag. Prods., Inc.</u>, 247 F.R.D. 686, 691 (S.D. Fla. 2007). In so doing, the court does not delve into the merits of plaintiffs' substantive claims. <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177-78 (1974).

A Plaintiff seeking class certification must satisfy the four requirements listed in Fed. R. Civ. P. 23(a). Specifically, the moving party must show that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and that (4) the representative parties (plaintiff and counsel) will fairly and adequately protect the interests of the class. <u>See</u> Fed.R.Civ.P. 23(a); <u>see also</u>, <u>AmChem Prod., Inc. v. Windsor</u>, 521 U.S. 591 (1997). In addition to the requirements listed in Rule 23(a), the moving party must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Plaintiff herein submits that they have satisfied the requirements of all three subsections (1)(2) & (3).

*Numerosity*

Here, Defendants do not contest the satisfaction of the numerosity requirement. Upon review, the Court finds that Plaintiff has satisfied same.

*Commonality and Typicality*

Although the Supreme Court has found that the commonality and typicality prerequisites "tend to merge," the requirements are slightly different in their analytical scope. <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 159 (1982). Commonality looks to legal and factual questions among the class members to determine whether the class is sufficiently cohesive to bring its claim together. 1 William B. Rubinstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 1:6 (4th ed. 2010).

Courts agree that this "commonality" prerequisite is "not demanding" – the proposed class members need only share one question of fact or law in common in order to meet the Rule 23(a)(2) commonality requirement, so long as the question moves the litigation forward. Newberg sect. 3:10.

Here, Plaintiff contends that the commonality prong is satisfied, because, inter alia, "Defendants engaged in a common scheme and practice of failing to remit appropriate plan assets to the retirement plan." **[DE41]**.   Plaintiff also argues that the harm to the plan, and the beneficiaries, stems from the common course of conduct and practice by Defendants, i.e., failure to deposit plan assets into the plan funds, failure to segregate plan assets, and failure to remit vested retirement benefits. Id.   The court agrees.   In so doing, the undersigned has considered, and rejected, Defendants' argument that commonality and typicality cannot be met because an individual analysis is required as to each proposed class member as to their number of routes, hours worked, fringe benefit rates, etc.   According to Defendants, this individualized analysis defeats the purpose of commonality and typicality.

For purposes of commonality, it is not necessary that all members have identical claims. Prado-Steinman ex rel Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000).   In other words, however, the need for ascertaining individual loss or conducting damage calculations does not eliminate the common issues by and between the putative class members.   See, Figueroa-Cardona v. Sorrells Bros. Packing Co., No. 2005-cv-00601, 207 WL 672303 (M.D. Fla. December 16, 2005).   (citing De Leon -Granados v. Eller & Sons Trees, Inc., 581 F. Supp. 2d 1295, Class Certification Order at 11 (N.D. Ga. Sept. 28, 2006) (finding commonality even though putative class members were employed by different work crews at various locations).   Further, as Plaintiff correctly asserts, calculating the individual damages will not require tens of thousands of mini-trials as "the figures composing the actual amount that was due and owed to each particular worker have already been tabulated and were placed, for example, on

13

each employee's pay check." **[DE53]**. See Sibley v. Sprint Nextel Corp., No. 08-2063-KHV, 2008 WL 2949564 662, 673 (D. Kan. July 30, 2008).

In sum, Plaintiff need only demonstrate a single issue common to all class members.  Here, Plaintiff has met his burden as to the central issues raised in the Amended Complaint, and has shown a sufficient nexus between his  legal claims and those of the putative class members.   For example, what does or does not constitute a "plan asset," and whether or not Defendants breached their fiduciary duty under ERISA.  Consistent with the above, the undersigned finds that Plaintiff has satisfied the commonality requirement.

Typicality looks to the relationship between the named plaintiff and the absent class members to "determine whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." Id. sect. 3:13.   The typicality requirement is satisfied if "the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on the same theory." Agan v. Katzman & Korr, P.A., 222 F.R.D. 692, 698 (S.D.Fla. 2004).  Even if the fact patterns are unique to each claim, the typicality requirement shall be satisfied if the class representative and the class members experienced the same unlawful conduct.  Id. at 698.

Here, the Amended Complaint alleges that Defendants breached their fiduciary duties under ERISA by, among other things,

a) failing to discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries ( i.e., breach of duty of complete loyalty);

b) failing to exercise appropriate care, skill, prudence and diligence under the circumstances;

c) dealing with the assets of the plan in their own interest for their own account rather than taking appropriate steps to assure that the assets of [the] plan shall never inure to the benefit of

14

the employer (i.e., using the plan assets to apparently pay creditors instead of segregating the assets into a separate trust fund account for the benefit of the plan) ;

Am. Compl. **[DE28, ¶39]**.

Because the putative class members' claims arise out of the same alleged conduct and the same basic facts, the undersigned finds that Plaintiff has satisfied the typicality requirement as well.

*Adequacy of Representation*

Next, the Plaintiff must satisfy the adequacy of representation requirement. This requires the court to evaluate any conflicts of interest between the named plaintiffs and class counsel to ensure vigorous and fair litigation. Pickett v. Iowa Beef Processors, 209 F. 3d 1276, 1280 (11th Cir. 2000). Defendants' objections to Mr. Pantoja serving as class representative appear to relate to the standing issues noted *supra;* and not so much adequacy of representation. The Court is familiar with Plaintiff's counsel, Mr. Neghabani. He is an experienced lawyer who frequently practices in federal court. The Court is not otherwise aware of any conflict, and as such, the undersigned finds that Mr. Pantoja and counsel will adequately represent the class.

*Rule 23(b)(1)(B)*

As noted above, in addition to the requirements listed in Rule 23(a), the moving party must demonstrate that the action is maintainable under *one* of the three subsections of Rule 23(b). Plaintiff herein submits that they have satisfied the requirements of all three subsections (1)(2) & (3). The rule states as follows:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

> > (1) prosecuting separate actions by or against individual class members would create a risk of:

15

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

Fed.R.Civ.P. 23(b)(1).

For present purposes, we begin with the first, to wit: Rule 23(b)(1).  In this connection, Plaintiff argues that, because Plaintiff is "seeking relief on behalf of the fund/plan as a whole," prosecution of separate actions by individual class members would "create a risk of adjudications  which would be dispositive of other members not parties to such adjudications." [DE41]. The undersigned agrees.  As correctly noted by Plaintiff, if individual class members are left to file separate actions, each one may result in different results as to the alleged breaches, the defenses raised, and/or any injunctive relief that is awarded.  See Piazza v. Ebsco Industries, Inc., 273 F.3d 1341 (11th Cir. 2001) (noting that certification of  ERISA action was more appropriate under Rule 23(b)(1), because, prosecution of separate actions would create risk of inconsistent adjudications); see also, Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co., 140 F.R.D. 474 (S.D. Ga. 1991) (certifying ERISA action under Rule 23(b)(1)(B) because individual ERISA actions to remedy breaches of fiduciary duty would "substantially impair or impede" the ability of absent beneficiaries and participants to protect their interests").  Having determined that certification is appropriate under 23(b)(1), it is not necessary to address certification under 23(b)(2) or (b)(3).

## Conclusion

Consistent with the above and foregoing, it is hereby **RESPECTFULLY RECOMMENDED** that Plaintiff's Motion for Class Action Certification **[DE41]** be **GRANTED.**

16

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Court Judge. Failure to file timely objections shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1998); cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida on this 31st day of May 2011.

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc:    Hon. Joan A. Lenard
       Counsel of Record

17